Ilan Markus, Esq.
LeClairRyan, A Professional Corporation
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut 06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231
Email: ilan.markus@leclairryan.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | |
|---|---|
| JOHN RICCI-BREEN and<br>MARGARET RICCI-BREEN, | Chapter 13 |
| Debtors. | Case No. 14-22798 (rdd) |

-------------------------------------------------------------------x

**POST-TRIAL BRIEF OF PNC BANK, NATIONAL ASSOCIATION,**
**FOLLOWING EVIDENTIARY HEARING ON APRIL 14, 2015**

PNC Bank, National Association, successor by merger to National City Bank ("PNC Bank"), by and through its undersigned counsel, files this Post-Trial Brief Following Evidentiary Hearing on April 14, 2015, and in support thereof, states as follows:

**BACKGROUND**

1. John Ricci-Breen and Margaret Ricci-Breen (the "Debtors") are adult individuals who reside at 81 Poplar Road, Briarcliff Manor, New York 10510 (the "Real Estate").

2. On June 5, 2014 (the "Petition Date"), the Debtors filed a voluntary petition under chapter 13 of title 11 of the United States Code with this Court.

3. On October 28, 2014, the Debtors filed their Motion to Avoid Second Mortgage Lien Held by PNC, N.A. (the "Motion"). The Motion asserts that the amount of the first mortgage on the Real Estate was $429,736.93 on the Petition Date, and that the value of the Real

Estate on the Petition Date was $400,000.00.[1]  In the Motion, the Debtors acknowledge that PNC held a second mortgage on the Real Estate in the amount of $193,249.32 as of the Petition Date. The Debtors argue, however, that because the value of the first mortgage exceeded the value of the Real Estate as of the Petition Date, PNC's alleged wholly unsecured mortgage can be "stripped off" in this chapter 13 case notwithstanding the anti-modification provisions of 11 U.S.C. §1322(b)(2).  See In re Pond, 252 F.3d 122 (2d Cir. 2001).

4. On November 14, 2014, PNC filed its Objection to the Debtor's Motion to Avoid Lien (the "Objection").  The Objection asserted, among other things, that the value of the Real Estate as of the Petition Date was $440,000.00.

5. The Motion and the Objection thereto were scheduled for an evidentiary hearing (the "Hearing") on April 14, 2015, and the Hearing was conducted on that date.  At the conclusion of the Hearing, the Court authorized the parties to brief the following two issues: (a) should hypothetical costs associated with a potential sale of the Real Estate be subtracted from the Court's determined value of the Real Estate? (b) should hypothetical "carrying costs" associated with a potential sale of the Real Estate be subtracted from the Court's determined value of the Real Estate?

**POST-HEARING ISSUES**

A. <u>Hypothetical Costs Associated with a Potential Sale of the Real Estate Should Not Be Subtracted from the Court's Determined Value of the Real Estate</u>

6. When a debtor is retaining the property that is being valued, courts have consistently determined that hypothetical costs of sale or liquidation (e.g., a sales commission) should not reduce the fair market value of the property.  <u>Taffi v. United States of America (In re</u>

---

[1] In the Motion, the Debtors also included a second appraisal valuing the Real Estate at $390,000.00.  The Debtors did not introduce the second appraisal into evidence at the evidentiary hearing on the Motion after another version of the second appraisal with a $420,000.00 valuation of the Real Estate was delivered to PNC's counsel before the hearing.

2

Taffi), 96 F.3d 1190, 1192–93 (9th Cir.1996); Huntington National Bank v. Pees (In re McClurkin), 31 F.3d 401, 405 (6th Cir.1994); Coker v. Sovran Equity Mortgage Company (In re Coker), 973 F.2d 258, 260 (4th Cir.1992); Pringle v. Scott Street Investments, L.L.C. (In re Pringle), 2010 WL 1424365 (Bkrtcy.D.Kan., April 1, 2010); Gordon v. Mattice (In re Lopez), 2003 WL 21976631 (Bkrtcy.W.D.N.Y.) Smith v. Household Finance Realty Corp. (In re Smith), 262 B.R. 594, 599 (Bankr.E.D.N.Y.2001); In re Richardson, 280 B.R. 717, 719 (Bankr.S.D.Ala.2001); In re Sumner, 178 B.R. 16, 18 (Bankr.M.D.Ga.1995); In re Jones, 152 B.R. 155, 183–84 (Bankr.E.D.Mich.1993).

7. In Coker v. Sovran Equity Mortgage (In re Coker), 973 F.2d 258 (4th Cir.1992), the Fourth Circuit Court of Appeals interpreted Section 506(a) of the Bankruptcy Code in its entirety and reviewed relevant case law. The reading of Section 506(a) embraced by the Fourth Circuit focused on the language contained in the second sentence, "the purpose of the valuation and ... *the proposed disposition or use of [the] property*." Coker, 973 F.2d at 260 (emphasis added) (citing In re Usry, 106 B.R. 759 (Bankr.M.D.Ga.1989); and In re 222 Liberty, 105 B.R. 798, 804 (Bankr.E.D.Pa.1989)).

8. Where the proposed disposition or use of the property is retention of the property by the debtor, such as is the case here, courts generally do not account for hypothetical costs of a sale that will not take place. "In the case of Coker and others reaching the same result, the courts give meaning to the language of section 506(a) in whole, and recognize that the debtors in question are keeping the property at issue. To allow the debtors to keep the property while deducting hypothetical sale costs from the value is inappropriate given that the sale costs being deducted are truly 'hypothetical.'" Smith v. Household Finance Realty Corp. (In re Smith), 262 B.R. 594, 599 (Bankr.E.D.N.Y.2001).

3

9. As stated by the Fourth Circuit:

> Chapter 13 is a reorganization mechanism for individuals. One of its advantages to the homeowner debtors is that they may retain their home by reaffirming the mortgage debt. Were we to permit the deduction of hypothetical sale costs in the face of the [debtors'] stated intention, an intention that is subject to the bankruptcy court's approval, we would create an anomalous situation indeed. On the one hand, the debtors have submitted their plan, which includes a pledge to continue their mortgage payments in full. If this pledge is carried out, the mortgagees will obtain full value of their bargained-for security interests. On the other hand, the [debtors] want the court to value [the bank's] claim as if the very event that Chapter 13 permits them to avoid has occurred, i.e., a foreclosure. If the 'proposed use or disposition' provision is to have any meaning, the debtor should not be permitted to 'eat with the hounds and run with the hares.' In re Crockett, 3 B.R. 365, 367 (Bankr.N.D.Ill.1980).

In re Coker, 973 F.2d at 260.

10. "Other courts have found additional support for declining to deduct hypothetical sales costs from valuation of the debtor's residence under section 506(a) of the Code in the applicable legislative history. As noted in H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong & Admin.News 1978, p. 6312, valuation of a secured lien holder's claim does not necessarily contemplate a forced sale of the property. In re Dinsmore, 141 B.R. 499, 510 (Bankr.W.D.Mich.1992) ([w]here debtor chooses to retain and use property, the applicable facts dictate that closing costs are not to be considered in valuation)." In re Smith, 262 B.R. 594 at 600.

11. In the case at hand, the Debtors are not selling the Real Estate and closing costs are not actual expenses in this case. Therefore, it is inappropriate to deduct the hypothetical sale costs from the fair market value of the Real Estate for purposes of the Motion.

B. Hypothetical "Carrying Costs" Associated with a Potential Sale of the Real Estate Should Not Be Subtracted from the Court's Determined Value of the Real Estate

12. For the same reason – the fact that no sale will occur – this Court should not subtract hypothetical "carrying costs" from its determined value of the Real Estate.

4

13. The issue of "carrying costs" was raised by the Court towards the end of the Hearing. Upon information and belief, the meaning of carrying costs (from the Court's perspective) was expenses associated with maintaining the Real Estate pending the closing of a sale of the Real Estate. Upon information and belief, the example of carrying costs provided by the Court was the Real Estate taxes that would accrue pending a sale of the Real Estate.

14. Just like a potential sales commission, pre-sale carrying costs are not considered by courts when valuing a property under Section 506(a) that a debtor is retaining. The same case law that provides that hypothetical sale costs should not be deducted from fair market value when a debtor is retaining property applies to carrying costs.

> This court agrees with other circuits in concluding that hypothetical costs of sale should not be deducted when determining value under section 506(a). See In re Taffi, 96 F.3d 1190 (9th Cir.1996); In re McClurkin, 31 F.3d 401 (6th Cir.1994); In re Jones, 152 B.R. 155 (Bank.E.D.Mich.1993). When a Chapter 13 debtor intends to retain property subject to a lien, the purpose of valuation under section 506(a) is not to determine the amount the creditor would receive if it had to hypothetically foreclose on the property. In re Taffi, 96 F.3d 1190, 1192 (9th Cir.1996). Instead, if the debtor's proposed plan includes retention of the property, the valuation is determined by the amount the creditor will receive for debtor's continued possession. Id. Hypothetical sale costs are not to be considered because no sale is intended. Id.

Hard v. Webster Bank (In re Hard), 2013 WL 960404 (Bankr. N.D.Ill. Mar. 8, 2013).

15. Because no sale will occur, no hypothetical sale or carrying costs should be considered.

WHEREFORE, PNC Bank respectfully requests that the Court decide not to adjust the fair market value of the Real Estate on account of hypothetical sale or carrying costs, and for such other and further relief as the Court deems just and proper.

Dated: May 14, 2015

Respectfully submitted,

**LeClairRyan,**
A Professional Corporation

By: */s/ Ilan Markus*
Ilan Markus, Esq.
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut 06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231
Email: ilan.markus@leclairryan.com

*Counsel for PNC Bank, National Association*