UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:                                                          Chapter 13

   *John and Margaret Ricci-Breen,*                Case No. 14-22798 (rdd)

                Debtor(s).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW

### I. INTRODUCTION

Bronson Law Offices, P.C. submits this Memorandum of Law on behalf of Debtors to support their position as to valuation of their residence located at 81 Poplar Road, Briarcliff Manor, NY 10510 (the "Property"). Specifically Debtors contend that for valuation purposes the cost of sale (real estate commissions) and carrying costs (the cost of maintain a property while it is marketed and sold) should be deducted from the appraised value for 506(a) purposes.

### II. STATEMENT OF FACTS

The Debtors filed for protection under Chapter 13 of the Bankruptcy Code on June 5, 2014. The Property owned by Debtors is secured by two mortgages with the first being held by Bank of America, N.A. and the second mortgage by PNC Bank, N.A. ("PNC"). On October 28, 2014, Debtors filed a motion to avoid the lien of PNC pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2) of the Bankruptcy Code (the "Pond Motion"), alleging that the value of the second mortgage was less than the value of the first mortgage. PNC Bank, N.A. through its attorneys filed an objection to the Pond Motion on November 14, 2014. Debtors filed a reply to PNC's objection and subsequently a hearing was held to determine valuation. Both Debtors and PNC provided appraisers as witnesses and on April 14, 2015, they provided testimony as to valuation

1

of the Property. The Debtor's appraisal valued the Property at $400,000 and PNC's appraiser valued the Property at $440,000. PNC's appraiser stated at the hearing that he did not take the cost of sale (real estate commissions) into account in rendering his appraisal.

### III. ARGUMENT

**The appraised value of a property should be reduced by the costs of sale of the Property as well as carrying costs for valuation purposes under Bankruptcy Code § 506(a) in furtherance of a Pond Motion.**

*In re Pond*, 252 F.3d 122 (2d Cir. 2011), confirmed that a chapter 13 debtor could avoid a wholly unsecured second mortgage that encumbered a principal residence. 252 F.3d at 127. Judge Morris explaining *Pond* stated that "[t]o arrive at this conclusion, the Second Circuit analyzed the interaction between §§ 506(a) and 1322(b)(2). Noting that § 1322(b)(2) allows a debtor to modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, the court focused on whether the mortgage holder held a secured claim." *In re Wapshare*, 492 B.R. 211 (Bankr. S.D.N.Y. 2013). The Second Circuit concluded that the antimodification exception is triggered only where there is sufficient value in the underlying collateral to cover a portion of a creditor's claim. See **In re Wong**, 488 B.R. 537, 540 (Bankr. E.D.N.Y. 2013) (wherein Judge Stong determined that *Pond* stands for the proposition that where there is no value in the collateral to cover the claim, the antimodificaiton provision does not apply). This Court stated in *In re Maria Sands*, Case No. 12-23241(rdd) (Bankr. S.D.N.Y. Sept 12, 2012), ECF No.22) a Chapter 20 case that "under the Second Circuit law-because, obviously, we're all governed by the *Pond* case-1325(a)(5) doesn't kick in….and the Pond rationale is consistent with not having it kick in.").

Accordingly if there is one dollar of value backing PNC's mortgage, PNC would be secured and if there is no value backing PNC's mortgage, PNC's mortgage would be wholly unsecured. The issue that counsel has been asked to brief is whether or not a real estate commission and/or other carrying charges should reduce an appraiser's valuation where those costs have not been taken into account in the appraisal.

"According to § 506(a), it is the creditor's interest in the debtor's interest that is to be valued. In determining this value, the bankruptcy court must consider both the purpose of the valuation and the 'proposed disposition or use' of the property. Beyond these rather amorphous guidelines, however, the statute is silent regarding whether retail price, wholesale price, or some other value should be assigned to the creditor's interest." *In Re Valenti*, 105 F.3d 55 (2d Cir. 1997).

It is our position that PNC is unsecured since the "antimodificaiton exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value…so that the lien is at least partially secured under § 506(a)." *Pond at 126*. A disposition of the Property at the appraised value proffered by PNC's appraiser ($440,000), reduced by the first mortgage ($429,736.93) and the costs of sale (5% commission-$21,486) would result in no value for the second mortgage.

While *Associates Commercial Corporation v. Rash*, 520 U.S. 953 (S.Ct. 1997), examined the language and meaning of 11 U.S.C. §506(a) and concluded that "[i]n sum, under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) "cram down" option is the cost the debtor would incur to obtain a like asset for the same "proposed…use." at, it is distinguishable and not controlling. *Id* at 958. *Rash* involved the cram down of a car used by the debtor for business purposes. The value to the debtor was the continued use of the car to pursue his livelihood and foreclosure was not a consideration. Justice Stevens dissented from the

3

majority opining that "Allowing any more than the foreclosure value simply grants a general windfall to undersecured creditors at the expense of unsecured creditors. *Id* at 967.

Judge Glenn in *In re Sneijder*, 407 B.R. 46(S.D.N.Y. 2009) concluded that "where surrender is proposed under §1325(a)(5)(c), and the collateral is valued under § 506(a)…,a foreclosure valuation would appear to be the most appropriate methodology to use." *Id* at 52. Cf. *In re Barse*, 301 B.R. 404 (Bankr W.D.N.Y. 2003) where in a car redemption case the court analyzed *Rash* but came to the conclusion as follows: "I find that the proper standard for determining the value of a motor vehicle being redeemed under Section 722 is its wholesale value, in accordance with the Donley Decisions cited herein").

"Courts have consistently held that valuation of assets is 'not an exact science'. *Lepage v. Bank of America* (*In re: Lepage*) (Bankr E.D.N.Y. 2011); "Appraisers are called upon to use the best statistics and facts in presenting valuations and courts must examine the reasonableness of financial assumptions used by appraisers". *In re: YL West 87th Holdings I LLC* (423 B.R. 421 (Bankr. S.D.N.Y. 2010) (while valuing a shopping center, the appraisers in *In re: YL West 87th Holdings I LLC* used very sophisticated methods of valuation including taking into account the "carrying costs" which included marketing expenses, sales commission and transfer costs). *Id* at fn 25.

Valuation under §506(a) for a Pond Motion is very different than valuation relating to a car as was considered by the *Rash* court. Section 506(a) states that "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. A second mortgage that is not backed by value is deemed unsecured and in this case,

foreclosure value is the most appropriate methodology of determining value. In a foreclosure the second mortgage would receive none of the proceeds of sale due to the costs of sale and the cost of foreclosure. This Court in formulating its opinion should take into account the general state of the economy, the rationale behind the decision in *Pond* (which correctly judicially eviscerates the antimodification provision of §1322(b)(2) as relates to second mortgages that are not backed by any value) and the inapplicability of the *Rash* decision as to replacement value under the facts presented herein.

The alternative of ignoring the costs of sale for the purposes of valuation of property in a Pond motion would create an untenable situation where a second mortgage was deemed to be secured, but in a sale or foreclosure would receive no repayment. In today's economy where foreclosures are rampant due to the triple whammy of decline in income, loss of value in retirement accounts and the devaluation of home prices caused mainly by the lending community's bad actions, the court should be a counterbalance. Accordingly, it is postulated that the Debtors have met their burden of proof and therefore, PNC must submit sufficient evidence to overcome the Debtors' valuation, which PNC has not done because the real estate commissions and carrying costs were not taken into account. *Lepage* quoting *In re Karakas*, 2007 WL 1307906 at 7.

## IV. CONCLUSION

Based upon the developing case law, the purpose of the valuation and the court's broad discretion to determine valuation after a hearing, this court should use an analysis that takes into

5

account both real estate commissions and the carrying costs of the Property during the projected period for which it would take to sell.

Dated: Harrison, New York
      May 13, 2015

Respectfully submitted,
/s/ H. Bruce Bronson
By: H. Bruce Bronson (HB 3263)
Bronson Law Offices, P.C.
Counsel to the Debtors
480 Mamaroneck Ave.
Harrison, NY 10580
Telephone: 877-385-7793
Fax: 888-908-6906